Filed 2/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CARLOS HECTOR ALVAREZ,<br><br>　　　Defendant and Appellant. | B309269<br><br>(Los Angeles County<br>Super. Ct. No. KA123941) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Jacqueline H.  Lewis, Judge.  Affirmed.

　　　　Daniel Milchiker, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.

　　　　　　　　　————————————

A jury convicted Carlos Hector Alvarez of one count of first degree residential burglary.  On appeal Alvarez contends the trial court erred in admitting his statement to law enforcement officers obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  Alvarez also contends the court's order during the COVID-19 pandemic that all persons in the courtroom, including testifying witnesses, wear a mask covering the mouth and part of the nose interfered with the jury's ability to assess witness demeanor and thus violated his Sixth Amendment right to confrontation.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Information*

An information filed February 19, 2020 charged Alvarez with one count of first degree residential burglary (Pen. Code, § 459)[1] with a person other than an accomplice present (§ 667.5, subd. (c)(21)).  Alvarez pleaded not guilty.

2. *The Evidence at Trial*

On January 22, 2020 Elen and Stephan Arabian's young son alerted them to a man standing in their yard.  The Arabians checked their home security camera and saw Alvarez standing underneath their son's window.  After calling the 911 emergency number, the Arabians checked the security camera again and saw Alvarez trying to open the door to their converted, furnished garage, which Stephan Arabian used as a cigar room.  When Los Angeles County Sheriff's deputies arrived at the Arabians' home, Elen led them in through the house and unlocked the door of the cigar room leading to the outside.  As soon as it was

---

[1]     Statutory references are to this code.

2

unlocked, the door "flung open" from the outside, and Alvarez stepped into the house. Los Angeles County Sheriff's Deputies Luis Capilla and Vincent Soto immediately apprehended him. Alvarez was wearing socks on his hands. Deputy Capilla testified that, in his training and experience, individuals covered their hands with socks and similar items to prevent them from leaving fingerprint evidence.

Alvarez was handcuffed and led to the patrol car. Before reaching the car, the deputies noticed a large plastic trash bag near the side gate. Deputy Vincent Soto asked Alvarez whether the bag was his. Alvarez replied, "Yeah." Soto picked up the bag and took it to his patrol car. Deputies did not provide Alvarez with *Miranda* warnings before this exchange took place.

Surveillance footage from the home security camera introduced at Alvarez's trial showed Alvarez climbing over a locked fence to enter the Arabians' yard and then standing at the door to the converted garage for more than nine minutes. The outside doorknob was damaged. Elen Arabian testified the doorknob had not been damaged prior to Alvarez's appearance at the home.

Alvarez did not testify, and the defense presented no witnesses. The theory of the defense was that, while Alvarez had been in the backyard, he never actually entered the home, so there was no burglary. Alternatively, even if he had entered the home, he did not do so with intent to commit a theft.

3. *Verdict and Sentence*

The jury convicted Alvarez of first degree residential burglary with a person present. The court sentenced Alvarez to the middle term of four years in state prison.

## DISCUSSION

1. *Alvarez Forfeited His* Miranda *Objection*

    a. *Governing law*

"A defendant who is in custody . . . must be given *Miranda* warnings before police officers may interrogate him." (*People v. Haley* (2004) 34 Cal.4th 283, 300.)[2] Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda, supra,* 384 U.S. at p. 444; accord, *Illinois v. Perkins* (1990) 496 U.S. 292, 296; *People v. Thomas* (2011) 51 Cal.4th 449, 476.) Statements obtained in violation of *Miranda* are generally inadmissible; they may be admitted for the limited purpose of impeachment if otherwise voluntarily made. (*Harris v. New York* (1971) 401 U.S. 222, 225; *People v. Case* (2018) 5 Cal.5th 1, 26.)

    b. *Relevant proceedings*

At trial the prosecutor asked Deputy Capilla on direct examination, "When you saw that plastic bag, did you ask the defendant if the plastic bag was his?" Capilla responded, "My partner [Deputy Soto] asked him in my presence if it was his."

---

[2]     "As a prophylactic safeguard to protect a suspect's Fifth Amendment privilege against self-incrimination, the United States Supreme Court, in *Miranda,* required law enforcement agencies to advise a suspect, before any custodial law enforcement questioning, that 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" (*People v. Martinez* (2010) 47 Cal.4th 911, 947, quoting *Miranda, supra,* 384 U.S. at p. 479.)

The prosecutor asked, "And what did the defendant say—" Before the prosecutor finished the question, defense counsel interrupted with an objection, citing *Miranda.* The court responded, "Well, the question at this point was, 'Did you ask the defendant if the plastic bag was his?' And he said, 'My partner ask[ed] him.'" To that question the court overruled the "*Miranda* objection" as well as defense counsel's hearsay objection, which he made immediately following the court's statement. The prosecutor continued, "And what did the defendant say?" Defense counsel did not object. Deputy Capilla replied Alvarez had said, "yeah," indicating the bag belonged to him. Deputy Soto also later testified without objection that he had asked Alvarez whether the plastic bag was his and Alvarez had responded it was. During closing argument the prosecutor cited the presence of the trash bag, along with the socks on Alvarez's hands and the surveillance footage showing Alvarez scaling a locked gate, as evidence Alvarez intended to commit a theft.

       c.   *Alvarez's argument is forfeited*

Alvarez contends the court erred in overruling his *Miranda* objection because the evidence was undisputed the officers had asked him an incriminating question while he was handcuffed and in police custody. At the very least, he argues, the court should have stopped proceedings and held an evidentiary hearing to determine whether a custodial interrogation had occurred.[3]

---

[3] Alvarez did not move prior to trial to suppress or exclude his statement nor request an evidentiary hearing at trial. In any event, there were no disputed facts around the statement for the court to resolve at an evidentiary hearing.

Contrary to Alvarez's argument, the trial court overruled the objection because it was premature, not because the court found a *Miranda* violation had not occurred. The court observed the only question put to Deputy Capilla at the time defense counsel objected was whether Deputy Capilla had asked Alvarez if the bag was his. Because that question was limited to Capilla's statements, the court overruled the objection.

The trial court's reasoning may well have been faulty—the prosecutor had, in fact, asked the question (or, at least, most of the question) to which a *Miranda* objection would be properly directed. But after the court explained why it was overruling the objection and the prosecutor again asked what Alvarez had said in response to Deputy Soto's question, it was defense counsel's responsibility to reassert his objection. He did not, nor did he object when the prosecutor asked Deputy Soto the same question later at trial. Alvarez's *Miranda* argument is forfeited. (See Evid. Code, § 353; see generally *People v. Flinner* (2020) 10 Cal.5th 686, 726 ["a defendant forfeits an argument on appeal where he fails to object" at trial]; *People v. Seijas* (2005) 36 Cal.4th 291, 301 ["We have long held that a party who does not object to a ruling generally forfeits the right to complain of that ruling on appeal"; "[t]his bar 'is but an application of the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal'"].)

2. *The Court's Order Requiring Testifying Witnesses To Wear Face Coverings During the COVID-19 Pandemic Did Not Violate Alvarez's Sixth Amendment Right To Confrontation*

    a. *Relevant proceedings*

Alvarez's trial occurred during the COVID-19 pandemic. During a pretrial hearing, Alvarez's counsel stated his concern that allowing people to wear masks on the witness stand to protect against the spread of the virus would deprive Alvarez of his constitutional right to confrontation. Judge Mike Camacho responded witnesses might be able to drop their masks below their mouths while testifying behind a plastic shield, which had been installed on the witness stand following the COVID-19 outbreak, and return the masks to cover the tip of their nose and mouths when not speaking. After the case was transferred from Judge Camacho to Judge Jacqueline Lewis for trial, defense counsel raised his concern again, asking that witnesses testify without any facial covering. Judge Lewis stated, "Well, the court's not going to be granting that in full, but I do think having them remove their mask so they can be seen, I think momentarily, is appropriate." However, the court continued, "we do have issues in regard[] to safety obviously during the COVID pandemic, and we can address that further as well."

When the trial began and defense counsel again raised his objection to testifying witnesses wearing masks, the court (Judge Lewis) overruled the objection, explaining, "[I]t's not being used as a disguise for the witnesses. I do believe that, and again, I will describe this particular mask on the record, that you can still see their eyes. You can see a lot of expression in that part of their face. I understand what your request is, but I'm going to have

7

them use the mask for protection based on the orders of the presiding judge."[4]

The court described on the record the mask each witness wore. As described, the masks covered the tip of the nose and mouth of the witnesses, allowing the jury to see each witness's eyes and face from the tip of the nose to the top of the head.

b. *Governing law and standard of review*

The confrontation clause of the Sixth Amendment, applicable to the states through the 14th Amendment, provides, "In all criminal prosecutions, the accused court shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This right "'provides two types of protections for a criminal defendant: The right physically to face those who testify against him, and the right to conduct cross-examination.'" (*Coy v. Iowa* (1988) 487 U.S. 1012, 1016; see *Maryland v. Craig* (1990) 497 U.S. 836, 845) (*Craig*) [confrontation implies more than physical presence in the courtroom; it means compelling a witness "'to stand face to face with the jury in order they may

---

[4] At the time of trial the Los Angeles Superior Court operated under general order 2020-GEN-016-01, issued July 6, 2020, by Presiding Judge Kevin C. Brazile. The order stated in part, "All persons entering any courthouse or courtroom shall wear a face covering/mask over his or her nose and mouth at all times within public areas of the courthouse or courtroom. Face coverings may include a mask, scarf, or any other fabric that covers both the mouth and nose. Individuals who elect to wear face shields must ensure that the shield covers both the nose and mouth. The face shield must wrap around the sides of the wearer's face and extend to below the chin with a cloth drape from the bottom of the face shield to below the neck. Children under the age of three (3) are exempt from the order."

look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief"].)[5]

Nonetheless, while "face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause' . . ., it is not the *sine qua non* of the confrontation right." (*Craig, supra,* 497 U.S. at p. 847; accord, *People v. Wilson* (2021) 11 Cal.5th 259, 290.)  Rather, "'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' [citation], a preference that 'must occasionally give way to considerations of public policy and the necessities of a case.'" (*Craig*, at p. 849; accord, *Wilson,* at p. 290 [the criminal defendant's constitutional right of confrontation, while fundamental, is not absolute; neither, however, is it easily disregarded].)  The face-to-face requirement can be dispensed with, but "only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." (*Craig,* at p 850; accord, *People v. Arredondo* (2019) 8 Cal.5th 694, 709.)  This public policy exception is not a general

[5]     While American jurisprudence has for centuries identified demeanor as an important tool for assessing credibility (see *Mattox v. United States* (1895) 156 U.S. 237, 243; *Coy v. Iowa*, *supra*, 487 U.S. at p. 1016; *Craig, supra,* 497 U.S. at p. 850), some scholars have more recently urged reconsideration of that understanding, arguing assessments of demeanor are often based on widespread stereotypes and flawed assumptions. (See Simon-Kerr, *Unmasking Demeanor* (Sept. 2020) 88 Geo. Wash. L.Rev. Arguendo 158, 170 ["witnesses whose behavior or appearance 'diverges from the observer's expectation'—namely the white male normativity of the courtroom—are perceived as less credible," citing studies].)

one; it must be applied on a case-by-case basis. (*Craig,* at pp. 848-849 [exceptions to face-to-face confrontation will be permissible but only in "narrow circumstances" on a "case-specific" basis]; *Arredondo,* at p. 709.)

When, as here, there are no disputed facts, our review of the court's determination that its mask order did not violate Alvarez's rights under the confrontation clause is de novo. (*Lilly v. Virginia* (1999) 527 U.S. 116, 136; *People v. Wilson, supra,* 11 Cal.5th at p. 291; *People v. Bharth* (2021) 68 Cal.App.5th 801, 813.)

> c. *The masking order satisfied an important public policy and retained essential safeguards of reliability*

Alvarez contends partial facial coverings worn by witnesses at trial interfered with the important face-to-face aspect of confrontation. While acknowledging the order requiring courtroom participants to wear such coverings served an important public policy during the COVID-19 pandemic, he argues there were less restrictive alternatives available, as evidenced by Judge Camacho's suggestion of allowing a witness to testify behind a plexiglass shield. If a different judge was prepared to allow unmasked testimony in this manner, Alvarez argues, the court's decision to require witnesses wear face masks that covered their mouths and the lower part of the nose while testifying was not necessary to further the important health and safety policy of protecting the public during the COVID-19 pandemic.

Whatever Judge Camacho, or even Judge Lewis for that matter, may have considered before the court ruled at trial, there is no doubt that requiring people to wear masks covering the

mouth and the lower part of the nose while testifying in the courtroom during the COVID-19 pandemic served an important state interest in protecting the public from a contagious, and too often, lethal, disease.  As far as the less restrictive alternatives Alvarez cites, we find the response of the federal district court in *United States v. Crittenden* (M.D. Ga. Aug. 21, 2020, No. 4:20-CR-7 (CDL)) 2020 U.S.Dist. Lexis 151950 (*Crittenden*) to the same argument to be particularly apt:  "The [c]ourt's masking requirement is based upon the best available scientific information and advice.  The Centers for Disease Control and Prevention ('CDC') strongly recommends that to avoid infection from the dangerous coronavirus, individuals should practice social distancing and wear masks over the nose and mouth.  *Considerations for Wearing Masks*, Ctrs. for Disease Control and Prevention (updated Aug. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html.  The wearing of the mask not only protects the wearer of the mask, but more significantly, protects others who may be in the same room with the person.  [Citation.]  These precautions are particularly important inside of a building.  The CDC also makes a distinction between 'masks' and 'face shields,' which is what the Government recommends here.  The CDC finds that face shields are not as effective as masks, and it does not recommend substituting face shields for masks.  [Citation.]  Given the CDC recommendations, which are based on the best available science in this area, the [c]ourt finds that its social distancing and mask protocols are necessary and essential to protect the courtroom participants during a trial.  The [c]ourt further finds that face shields and plexiglass screens are not an adequate substitute and standing alone do not provide

reasonable protection for the trial participants.  Thus a compelling policy reason exists for the mask requirement— protection of the health and safety of the trial participants and members of the public who may attend the trial."

Alvarez alternatively argues, even if the mask rules furthered an important public policy by inhibiting the spread of COVID-19, reliability, the cornerstone of the confrontation clause protection (*Crawford v. Washington* (2004) 541 U.S. 36, 63; *Craig, supra*, 497 U.S. at p. 850), cannot be assured when the defendant and jury are deprived of the ability to fully assess a witness's demeanor while testifying.  A smirk, for example, can bear on witness credibility, but could go undetected in a masked individual.  And, he adds, witness credibility was critical in this case because the surveillance video never showed him actually entering the house, an essential element of burglary.  The evidence on that point, he asserts, was testimonial and conflicting.[6]

The "ultimate goal" of the confrontation clause, ensuring the reliability of evidence (*Crawford v. Washington, supra,* 541 U.S. at p. 63), "is a procedural rather than a substantive guarantee.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by subjecting it to the crucible of cross-examination" and other procedural safeguards.  (*Id.* at p. 61.)  Those procedural safeguards are:

---

[6] Two sheriff's deputies testified Alvarez took one step into the home, while Elen Arabian testified at the preliminary hearing Alvarez did not enter the home, testified on direct examination at trial he had entered the home, and admitted on cross-examination the deputies standing in front of her for her safety impeded her view.

(1) in-person testimony; (2) given under oath; (3) subjected to cross-examination and (4) the ability of the defendant and fact finder to view witness demeanor for the purpose of evaluating credibility. (*Craig, supra,* 497 U.S. at pp. 845-846.) The "combined effect" of these elements of confrontation "ensur[es] that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." (*Ibid.*)

Here, all four safeguards inherent in confrontation were present. Witnesses testified in the solemnity of the courtroom and in the presence of the defendant, under oath, and subject to rigorous cross-examination, """"the greatest legal engine ever invented for the discovery of truth.""" (*Craig, supra,* 497 U.S. at p. 846.) Although face masks covered the witnesses' mouths and the lower part of their noses, significant aspects of their appearance, including the eyes, tops of the cheeks, and the body, were readily observable as was posture, tone of voice, cadence and numerous other aspects of demeanor: "Demeanor includes the language of the entire body [and] jurors will still be able to observe most facets of the witnesses' demeanor. They can observe the witnesses from head to toe. They will be able to see how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak. They will be able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads. The Confrontation Clause does not guarantee the right to see the witness's lips move or nose sniff, any more than it requires the jurors to subject the back of a witness's neck to a magnifying glass to see if the hair raised

during particularly probative questioning." (*Crittenden, supra*, 2020 U.S.Dist. Lexis 151950).[7]

In arguably less compelling circumstances, courts have found no confrontation clause violation when all four procedural safeguards for ensuring reliability were present, despite some minimal limitation on a jury's ability to assess witness demeanor. (See e.g., *People v. Bharth, supra*, 68 Cal.App.5th at p. 818 [court did not violate defendant's right to confrontation by allowing victim to turn slightly in the witness chair to avoid staring at defendant directly; while the defendant's view was somewhat impeded, "[t]his minor interference with defendant's line of sight was fully justified given the need to complete the victim's testimony and her documented distress"]; *United States v. de Jesus-Castaneda* (9th Cir. 2013) 705 F.3d 1117, 1120-1121

---

[7] For these reasons, nearly every state and federal court to consider the issue during our current COVID-19 pandemic has found no confrontation violation because a witness was wearing a mask. (See, e.g., *United States v. Holder* (D.Colo. Sept. 27, 2021, No. 18-cr-00381-CMA-GPG-01) 2021 U.S.Dist. Lexis 184017; *United States v. Maynard* (S.D.W.Va. Nov. 3, 2021, No. 2:21-cr-00065) 2021 U.S.Dist. Lexis 211943; *State v. Jesenya O.* (N.M. Ct. App. Mar. 11, 2021, No. A-1-CA-39148) 2021 N.M. Ct. App. Lexis 17; *United States v. James* (D.Ariz. Oct. 14, 2020, No. CR-19-08019-001-PCT-DLR) 2020 U.S.Dist. Lexis 190783; *States v. Clemons* (D.Md. Nov. 4, 2020, No. RDB-19-0438) 2020 U.S.Dist. Lexis 206221; but cf. *United States v. Thompson* (D.N.M. June 11, 2021, No. 19-1610 MV-4) ___ F.Supp.3d ___ [2021 U.S.Dist. Lexis 109762] [granting motion in limine requesting unvaccinated testifying witnesses to wear a clear face shield to protect against virus transmission; such an order "appropriately strike[s] the balance of minimizing health risks" while "retaining the full force of Mr. Thompson's Sixth Amendment rights"].)

14

[confidential informant's wearing of a wig and fake mustache during testimony to protect his identity served an important public policy and did not unduly prohibit jury from evaluating demeanor]; *Morales v. Artuz* (S.D.N.Y. 2000) 2000 U.S.Dist. Lexis 16405 [trial court's ruling permitting prosecution witness to testify while wearing sunglasses did not violate defendant's right to confrontation; "permitting Sanchez to wear sunglasses while testifying is a relatively modest imposition on the right to face-to-face confrontation"].)

In concluding Alvarez's confrontation rights were not violated, we are mindful of the importance of the issue Alvarez raises and the likelihood it will recur as courts continue to grapple with the need to balance the health and safety of courtroom participants during the COVID-19 pandemic with the defendant's constitutional right to confrontation. There may well be occasions, due to the fluid nature of the pandemic and evolving health and safety measures, as well as the type of face covering that may be at issue, when the balance tips differently, and does not fit as neatly, within the public policy exception identified in *Craig*. That is not the case on the record before us.

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.             FEUER, J.

15